UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LACEY KOMOROWSKI, | ) | Case No. 1:19CV1327 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Lacey Komorowski (Komorowski or claimant) challenges the final decision of

Defendant Commissioner of Social Security (Commissioner) denying her applications for a

period of disability (POD) and disability insurance benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. (Act). This court has jurisdiction pursuant to 42

U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to

an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  The issue

before the court is whether the final decision of the Commissioner is supported by substantial

evidence and, therefore, conclusive.  For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be affirmed.

## I.  PROCEDURAL HISTORY

On March 9, 2017, Komorowski filed an application for a POD and DIB alleging

disability beginning April 10, 2016.  (R. 10, Transcript ("tr."), at 10, 188-189, 203-205, 206-

216).  Komorowski's application was denied initially and upon reconsideration.  *Id.* at 10, 89-

105, 106-121.  Thereafter, she filed a request for a hearing (*id.* at 10, 133-135) and an

administrative law judge (ALJ) held the hearing on September 18, 2018.  *Id.* at 45-88.

Komorowski participated in the hearing, was represented by counsel, and testified.  *Id.* at 47, 52-

82.  A vocational expert (VE) also attended the hearing and provided testimony.  *Id.* at 47, 82-87.

On December 24, 2018, the ALJ issued the underlying decision applying the standard

five-step sequential analysis and concluded Komorowski was not disabled.  *Id.* at 10-23; *see*

*generally* 20 C.F.R. § 404.1520(a).  The Appeals Council denied Komorowski's request for

review, thus rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1-3.

Komorowski's complaint challenges the Commissioner's final decision, pursuant to 42 U.S.C. §

405(g).  The parties have completed briefing and claimant argues the ALJ erred when

considering the following: opinions from a consultative examiner and nurse practitioner,

Komorowski's credibility, and Step Five of the Sequential Evaluation.  (R. 13, PageID #: 654).

## II.  PERSONAL BACKGROUND INFORMATION

Komorowski was born in 1988, and was 27 years old, which is defined as a younger

individual age 18-49 on the alleged disability onset date.  (R. 10, tr., at 22, 188, 203).  She has at

least a high school education and is able to communicate in English.  *Id.* at 22, 206, 208.

Komorowski has past relevant work as an office helper, administrative clerk, and administrative

construction assistant.  *Id.* at 22, 83-84.

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Komorowski's brief alleging error by the ALJ.  Komorowski applied for DIB benefits on March 9, 2017, alleging disability beginning April 10, 2016.  (R. 10, Transcript ("tr."), at 10, 188-189).  She listed her physical or mental conditions that limit her ability to work as: "major depression, severe anxiety, headaches, stomach pain, extreme tiredness, low energy, panic episodes, inability to focus, confusion, [and] dizziness."  *Id.* at 207.  Claimant stated that she was "unable to work because of my severe depression and anxiety," and that mental and physical pain made it hard to get through each day. *Id.* at 216.

On September 23, 2016, Nurse Practitioner Hiu Kwan Yip at Signature Health saw Komorowski for a psychological evaluation.  *Id.* at 274-276.  Claimant  reported current diagnoses of severe major depressive disorder and generalized anxiety disorder.  *Id.* at 274.  Her goal was to stabilize and improve mental health symptoms, and to increase her ability to achieve recovery, wellness and self-sufficiency.  *Id.*  Komorowski reported that depression symptoms had progressively worsened over the preceding five years.  *Id.* at 275.  She further reported symptoms of  "a persistent sense of sadness; anhedonia; hypersomnia; energy and motivation deficits; neglect of personal hygiene, diminished ability to focus or concentrate – cannot manage even simple tasks; appetite fluctuates, notices weight gain; sense of loss and hopelessness."  *Id.* Komorowski had not sought mental health treatment in the past (although she was seeing a

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

counselor), but received anti-depressants from her primary care provider.  *Id.*  She reported anxiety, but denied panic, social anxiety, specific phobias, obsessive compulsive disorder or attention deficit hyperactivity disorder.  *Id.*

NP Yip noted on mental status examination that claimant was oriented times four, with a depressed and frustrated mood, linear and organized thought content, no reports of hallucinations or delusions, and intact memory.  (R. 10, tr., at 276).  She was assessed with fair general knowledge, fair attention and concentration, fair judgment and fair insight.  *Id.*  Komorowski was diagnosed with Major Depressive Disorder, and prescribed Effexor.  *Id.*

On April 7, 2017, Signature Health submitted documents to the state agency in support of Komorowski's disability claim.  *See* R. 10, tr., at 264-272.  Many of the documents were either unsigned (*see id.* at 264, 265-266) or signed illegibly (*see id.* at 270), but it appears that at least some were completed and submitted by Rachael Martin, Nurse Practitioner[2] (*see id.* at 272).  The first (unsigned) form indicates that Komorowski was initially seen at Signature Health on November 9, 2016, and most recently on April 5, 2017.  *Id.* at 265.  Claimant was diagnosed with major depression and generalized anxiety.  *Id.*  Most of the questions (for example, "describe all pertinent findings on clinical examination," and "provide any available consultative, diagnostic testing") were simply answered "see notes."  *Id.*  The form indicated that claimant had "little to no improvement" in response to therapy.  *Id.* at 266.  The person who completed the form identified the following as limitations imposed on claimant's ability to perform work activity:

> - "unable to plan or follow instruction without anxiety (ex- can't follow a recipe or grocery shop for foods for recipe)"

---

[2]  Martin's last name later changed to McLaughlin.  (R. 10, tr., at 51).

4

- "unable to attend work consistently due to lack of desire, anhedonia, avolition"

- "hasn't engaged in tasks that sustain mental effort since starting tx"

*Id.*

A mental status questionnaire completed that same date indicated that Komorowski had normal conversational abilities, no apparent anxiety other than rigid posture, with a blunted and depressed mood and affect.  (R. 10, tr., at 268).  She had intact memory, average intelligence, adequate concentration, with fair insight and judgment, and poor coping ability.  *Id.*  In addition, she had intact abilities to remember, understand, and follow directions; to maintain attention; and to sustain concentration, persist at tasks, and complete them in a timely fashion.  *Id.* at 269.  Claimant was described as impaired in social interaction and adaptation; and she was assessed as reacting poorly to work pressures.  *Id.*

NP Martin completed a Daily Activities Questionnaire on April 7, 2017.  (R. 10, tr., at 271-272).  Martin indicated that Komorowski visited with family daily, but rarely with friends, and that there were no behaviors or deficits that would prevent independent living.  *Id.* at 271.  Claimant got along "fine" with employers and co-workers, but she had anxiety and avoided interaction.  *Id.*  Martin stated that claimant's inability "to cope with interaction with others[,]" and her "poor attendance due to poor motivation[]", "might prevent normal work activities[.]"  *Id.*  Martin noted that claimant's anxiety impacted her ability to prepare complex food recipes, shop, or take public transportation, although Komorowski was described as reliable in keeping her twice monthly appointments.  *Id.* at 272.  Claimant's treatment included medication management, counseling, and job counseling.  *Id.*  Martin did not note any problems with treatment.  *Id.*

5

On May 18, 2017, Komorowski presented for a psychological evaluation with clinical psychologist, Deborah Koricke, Ph.D.  (R. 10, tr., at 347-352).  The clinical interview was based on claimant's self-reporting, as well as two Social Security disability forms.  *Id.* at 347.  According to Dr. Koricke, Komorowski characterized her disability as, "I have severe depression, severe anxiety, extreme tiredness, no energy, and I hate my life." *Id.*  Claimant denied any medical conditions or chronic illness, although she said she had migraines.  *Id.* at 348.  She reported being treated by mental health counselor Shelly McClure and NP Martin for the past two years and noted she had been prescribed anti-depressants.  *Id.*  She reported difficulties with depression and anxiety since approximately 2006, and described sleep, energy and motivation issues.  *Id.*

Dr. Koricke reported that claimant's speech was clear and intelligible, and she had no difficulty understanding simple or complex questions.  (R. 10, tr., at 349).  Her thinking appeared logical and linear.  *Id.* Komorowski had a blunted affect, and told the psychologist her typical mood was depressed and nervous.  *Id.*  Claimant "discussed general feelings of being nervous and stressed about [the] future and finances[;] [s]he complained of being overwhelmed easily with stressors[;] [s]he was persistent during the mental status tasks, but had difficulties maintaining her focus and concentration." *Id.* at 349-350.  She was oriented to person, place, and time, and was assessed with average intelligence.  *Id.* at 350.  Komorowski reported difficulty with short term memory, attention, and concentration, which she attributed to depression or anxiety; sleep issues; difficulty with energy and motivation; and noted that some days she does not get out of bed.  *Id.*  She no longer engages in activities she used to enjoy, such as dancing, watching TV, or spending time with friends.  *Id.*

Dr. Koricke diagnosed Komorowski with Major Depressive Disorder, Recurrent, Severe; and Anxiety Disorder Unspecified.  (R. 10, tr., at 350-351).  The psychologist assessed that claimant's depression and anxiety were "likely to impact her in being able to remember and carry out instructions."  *Id.* at 351.  She also noted difficulties in concentration, attention, and memory.  *Id.*  Dr. Koricke opined that claimant would have limitations responding appropriately to supervisors or coworkers "due to blunted affect, passivity, and sad mood, symptoms associated with a depressive disorder and anxiety."  *Id.*  Her depression and anxiety would also cause limitations in her ability to respond appropriately to work pressures.  *Id.* at 352.

On May 27, 2017, Komorowski presented for a consultative medical exam with internist Ace Egger, M.D.  (R. 10, tr., at 354-358).  The physical exam showed normal results and the report noted "[n]o pertinent medical diagnosis can be made based on normal and benign physical exam."  *Id.* at 358.  The doctor opined that claimant can be expected to sit, stand, and walk normally during a workday.  *Id.*  There are no significant limitations for lifting or carrying weight, and no postural, manipulative or other physical workplace limitations of any kind.  *Id.*

State agency reviewing psychologist, Cindy Matyi, Ph.D., determined on June 1, 2017, that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for either Listing 12.04 (Depressive, Bipolar, and Related Disorders) or Listing 12.06 (Anxiety-related Disorders).  (R. 10, tr., at 97 (psychiatric review technique, "PRT")).  Under the "B" criteria for these Listings, Dr. Matyi assessed moderate difficulties in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself.  *Id.*

7

Dr. Matyi also completed a mental residual functional capacity ("RFC") assessment, which found that Komorowski was moderately limited in her ability to understand and remember detailed instructions.  (R. 10, tr., at 99-101).  Claimant is able to comprehend and remember simple (1-2 step) and occasional complex (3-5 step) instructions, which would need to be explained slowly and clearly for her to understand them.  *Id.*  The psychologist assessed that claimant was moderately limited in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance, and to be punctual with customary tolerances; work in coordination with, or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms.  *Id.*  The psychologist opined that Komorowski "can carry out simple and occasional complex tasks, maintain attention, make simple decisions, and adequately adhere to a schedule.  No strict time limits or production standards."  *Id.*

Dr. Matyi also found that Komorowski was moderately limited in her ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.* at 101.  The psychologist explained that claimant was socially avoidant and susceptible to misinterpreting interpersonal nuance.  *Id.*  "However, she can relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny."  *Id.*  Dr. Matyi also opined that claimant is moderately limited in her ability to respond appropriately to changes in the work setting.  *Id.*

8

The psychologist stated that Komorowski can adapt to a setting in which duties are routine and predictable. *Id.* Changes should be well-explained and introduced slowly. *Id.* Dr. Matyi summarized that claimant retained significant functional capacity despite the restrictions imposed by her condition. *Id.*

State agency medical consultant Anton Freihofner, M.D., completed a medical evaluation on June 9, 2017. (R. 10, tr., at 96). The doctor indicated that Komorowski alleged symptoms of headaches, stomach pain, extreme tiredness, low energy and dizziness, but the physical consultative exam of May 27 did not note any abnormalities in her system. *Id.* Dr. Freihofner determined that claimant's physical impairments are non-severe. *Id.*

On reconsideration, state agency medical consultant Leon D. Hughes, M.D., provided a medical evaluation of claimant on August 22, 2017. *Id.* at 112-113. Dr. Hughes concurred completely with Dr. Freihofner's evaluation, finding that claimant's physical impairments were non-severe. *Id.* at 113.

State agency reviewing psychologist, Todd Finnerty, Psy.D., determined on reconsideration dated August 22, 2017, that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for either Listing 12.04 (Depressive, Bipolar, and Related Disorders) or Listing 12.06 (Anxiety-related Disorders). (R. 10, tr., at 113 (psychiatric review technique, "PRT")). Under the "B" criteria for these Listings, Dr. Finnerty assessed moderate difficulties in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. *Id.* at 113-114. In addition, Dr. Finnerty concurred in Dr. Matyi's mental RFC assessment in all respects. *Id.* at 115-117.

9

On August 30, 2018, Rachael McLaughlin (formerly Martin), NP, completed a Mental Impairment Questionnaire.  (R. 10, tr., at 604-605).  The nurse practitioner indicated that claimant was currently diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, and Chronic Fatigue due to depression.  *Id.* at 604.  Clinical findings describe claimant as "tearful, depressed, blunted affect, moderate anxiety, illogical thought process at times, poor coping, possible psychosis (lack of interest/lack of enjoyment), cognitive decline, depressive symptoms, procrastinates, lethargic, sleeping all day, and lack of ability to connect or socialize with others."  *Id.*

The nurse practitioner completed a check-box portion of the form indicating Komorowski had seriously limited ability to carry out very short and simple directions; and she was unable to meet competitive standards in any other aspect of sustained concentration and persistence such as carrying out detailed instructions or maintaining attention and concentration for extended periods.  (R. 10, tr., at 604).  NP McLaughlin assessed claimant with a limited ability to remember locations and work-like procedures, a seriously limited ability to understand and remember very short and simple instructions, and an inability to meet competitive standards of understanding and remembering detailed instructions.  *Id.* at 605.  She further assessed Komorowski had: serious limitations with social interaction, no useful ability to function in interacting appropriately with the general public, the ability to recognize normal hazards and take appropriate precautions, an inability to respond appropriately to changes in the work setting and to set realistic goals or make independent plans.  *Id.*  NP McLaughlin opined that on average, claimant would be absent from work one to two days per week because of her impairments or

10

treatment, and she would be off task fifty percent of the time during a workday.  (R. 10, tr., at

605).

## IV.  ALJ's DECISION

The ALJ's decision on December 24, 2018, included the following findings of fact and

conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act
through December 31, 2021.

2.  The claimant engaged in substantial gainful activity during the following
periods:  November 2017 through March 2018 (20 C.F.R. 404.1520(b) and
404.1571 *et seq*).

3.  However, there has been a continuous 12-month period(s) during which the
claimant did not engage in substantial gainful activity.  The remaining findings
address the period(s) the claimant did not engage in substantial gainful activity.

4.  The claimant has the following severe impairments: major depressive disorder,
recurrent, with anxious distress, generalized anxiety disorder, unspecified, and
social phobia/social anxiety disorder (20 C.F.R. 404.1520(c)).

5.  The claimant does not have an impairment or combination of impairments that
meets or medically equals the severity of one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and
404.1526).

6.  After careful consideration of the entire record, the undersigned finds that the
claimant has the residual functional capacity to perform a full range of work at all
exertional levels but with the following nonexertional limitations:  can perform
simple routine tasks (unskilled work) with no fast pace or high production quotas
and with infrequent change where changes are introduced slowly and explained in
advance; with infrequent superficial interaction (meaning of a short duration for a
specific purpose) with co-workers and the public; can perform low stress work
meaning no arbitration, negotiation, responsibility for the safety of others and/or
supervisory responsibility.

7.  The claimant is unable to perform any past relevant work (20 C.F.R.
404.1565).

8.  The claimant was born on *** 1988, and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

9.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

12.  The claimant has not been under a disability, as defined in the Social Security Act, from April 10, 2016, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 12, 13, 15, 21, 22, 23).

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.*  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or

substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

### A.  Medical Opinion Evidence

The first legal issue that claimant presents for the court's review is:  "The ALJ failed to state valid reasons for rejecting the opinions of the consultative examiner and the treating certified nurse practitioner."  (R. 13, PageID #: 654, 666).

#### 1.  Nurse Practitioner

Ms. Komorowski argues that the ALJ erred by not considering NP McLaughlin's opinion as a treating source opinion and failing to provide good reasons affording the opinion less than controlling weight.  (R. 13, PageID #: 667).  Although the ALJ's decision referred to an April 2017 opinion and an August 2018 assessment by NP McLaughlin, claimant's argument challenges only the "limited weight" the ALJ assigned to the August 2018 medical assessment.[3] (R. 13, PageID #: 666, 668, citing R.10, tr., at 604 ("Mental Impairment Questionnaire")).

---

[3]  In contrast, the ALJ assigned "some weight" to McLaughlin's earlier April 2017 opinions, which the claimant does not cite in this context.  (R. 10, tr., at 21; R. 13, PageID #: 668).

14

An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight. *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007) (ALJ must evaluate each medical opinion in the record); *Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. § 404.1527(c).  The ALJ's decision considered the provider's assessment as follows:

> The undersigned affords limited weight to Ms. McLaughlin's (formerly Martin) assessment from August 2018.  As mentioned, she is not an acceptable medical source.  The opinion does not address that the claimant maintained work at substantial gainful activity level work on a full-time basis for six months. Additionally, the level of limitation alleged is not consistent with the overall findings that support no more than a moderate level of limitation, to include the ability to maintain appropriate eye contact, adequate attention and concentration, and consistently intact recent and remote memory.

(R. 10, tr., at 21).

While the ALJ's decision must consider the NP's medical source statement, it is not entitled to any particular deference.  Under the regulations that were in effect at the time that Komorowski filed her claim,[4] "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §404.1527(a)(1).  The regulations listed five

---

[4]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).  Although the ALJ's decision was issued after that date, plaintiff's claim was filed before March 27, 2017, and thus 20 C.F.R. §404.1527 (2017) ("Evaluating opinion evidence for claims filed before March 27, 2017") and related sections are the relevant regulations.

15

categories of "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a) (2017); *see also* SSR 06-3p. At the time of the relevant regulations, a nurse practitioner was not an "acceptable medical source," but was rather considered an "other source." *McNamara v. Commissioner*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (per curiam) (citing 20 C.F.R. § 416.913(d)(1)); SSR 06-3p, 2006 WL 2329939, at *2; *see also Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015).

Because nurse practitioners are not considered an "acceptable medical source" under the pertinent regulations, they cannot provide a "medical opinion," and the ALJ's decision need not afford any special deference to statements from a nurse practitioner. *Noto*, 2015 WL 7253050, at *4 (citing *Walters*, 127 F.3d at 530; *Engebrecht v. Commissioner*, 572 Fed.Appx. 392, 397-398 (6th Cir. 2014)); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). Moreover, an ALJ has discretion to assign the information any weight she deems appropriate based on the evidence of record. *Id.*

Komorowski makes several arguments on this issue. First, she contends that, although she filed her application on March 10, 2017, the regulations effective after that date should be applied retroactively to her claim. (R. 13, PageID #: 666-667). The court, however, must apply the regulations as written: Section 404.1527 specifically states that it is to be applied to "[e]valuating opinion evidence for claims filed before March 27, 2017." *See* 20 C.F.R. §§ 404.1513(a), 404.1527 (2017). The newer regulation applies to claims filed after that date, and is thus not applicable here. *See* 20 C.F.R. § 404.1502(a)(7) (2017) (claims filed on or after March 27, 2017).

16

Second, the claimant asserts that McLaughlin, a certified nurse practitioner, should be considered an acceptable medical source under Section 1502, because the new regulation (Section 404.1502(a)(7)) defines an "acceptable medical source" to include Licensed Advanced Practice Registered Nurses (APRNs).  (R. 13, PageID #: 667).  This argument fails.  Although Section 1502 is not the applicable regulation in this case, it is noteworthy that even if it were, the agency specifically rejected the suggestion—made in comments to the proposed rule—to include nurse practitioners along with APRNs as acceptable medical sources.  *See* 82 *Fed. Reg.* 5844, 5846; Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819 (Jan. 18, 2017).  In other words, APRNs are deemed acceptable medical sources under the new regulations, 20 C.F.R. § 404.1502(a)(7); NPs are not, 82 *Fed. Reg.* at 5846.  In any event, as explained above, given the filing date of Ms. Komorowski's claim, the pre-existing regulations (20 C.F.R. §§ 404.1513(a), 404.1527) govern the claim, not Section 1502.

Nevertheless, while information from other sources cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment," and how it affects the individual's ability to function.  SSR 06-3p, 2006 WL 2329939, at *2-*3; *Cruse*, 502 F.3d at 541.  Opinions from "other sources" who have seen the claimant in a professional capacity should be evaluated by considering how long the source has known the claimant, how consistent the source's opinion is with other evidence, whether the source provides relevant evidence supporting the opinion, and how well the source's opinion is explained.  *Cruse*, 502 F.3d at 541; SSR 06-3p, 2006 WL 2329939, at *4-*5.

The ALJ does not have a heightened duty of articulation when evaluating other source opinions, although the ALJ must consider those opinions.  *Hatley v. Commissioner*, No.

17

1:13CV1189, 2014 WL 3670078, at *9 (N.D. Ohio July 22, 2014) (citing *Clark ex rel. S.R.C. v. Commissioner*, No. 5:12CV1745, 2013 WL 3007154, at *12 (N.D. Ohio June 11, 2013)). Here, the ALJ supported her assessment of McLaughlin's August 2018 opinion by finding that the extreme limitations opined by the nurse practitioner were inconsistent with the overall weight of the medical evidence of record. (R. 10, tr., at 21). The ALJ pointed out, for example, that the August 2018 opinion did not address that claimant had maintained work at a substantial gainful activity level on a full-time basis earlier in 2018 (early November 2017 through mid-April 2018). *Id.*, *see also* R. 10, tr., at 12, 50-51. In addition, the ALJ noted when discussing NP McLaughlin's April 2017 opinion, that it found "several areas are intact, which is not consistent with the moderate limitations" in that opinion, and contradicts the more extreme limitations in the 2018 assessment. (R. 10, tr., at 21, citing MER).

The court finds that the ALJ's assessment of the opinion evidence in question is supported by substantial evidence, and accords with the relevant regulations concerning the evaluation of opinion evidence. *See generally* 20 C.F.R. § 404.1527(c); SSR 06-3p. Plaintiff's argument to the contrary is not persuasive.

2. Consultative examiner

Ms. Komorowski also argues that the ALJ's assignment of "some weight" to the opinion of the consultative examiner, Dr. Koricke, is in error. (R. 13, PageID #: 669). Claimant contends that the limitations opined by Dr. Koricke should have resulted in a more restricted residual functional capacity (RFC) and a finding of disabled. *Id.* at 669-670.

The ALJ addressed Dr. Koricke's opinion as follows:

> The undersigned affords some weight to the assessment of Dr. Koricke. She evaluated the claimant in person and has specialist knowledge. However, the

18

overall evidence supports no more than moderate limitations.  As outlined above, the claimant was able to present as cooperative and make appropriate eye contact. Findings of impairment of attention and concentration are not consistent, and her recent and remote memory were consistently intact.

(R. 10, tr., at 20, citing medical evidence of record (citations omitted)).  The ALJ properly noted the doctor's specialty, and that she had evaluated Komorowski in person.  *Id.*  The ALJ pointed out, however, that the doctor's evaluation was not consistent with other cited evidence of record supporting no more than moderate limitations.  *Id.*  For example, Dr. Koricke opined that claimant's depression and anxiety were "likely to impact her in being able to remember and carry out instructions," and that she had difficulties in concentration, attention, and memory, R. 10, tr., at 351, but the progress notes cited by the ALJ repeatedly assessed claimant's attention and concentration to be "fair" (*id.* at 276, 279, 283, 298, 495), and found her recent and remote memory to be intact (*id.* at 276, 280, 284, 299, 495).  In addition, the psychologist opined in May 2017, that claimant would have limitations responding appropriately to supervisors or coworkers, but the claimant denied any symptoms of social anxiety at the September 2016 psychological evaluation.  (R. 10, tr., at 275, 351).

The court finds that the ALJ's assessment of the opinion evidence in question is supported by substantial evidence, and accords with the relevant regulations concerning the evaluation of opinion evidence.  *See generally* 20 C.F.R. § 404.1527(c); SSR 06-3p.  Plaintiff's argument to the contrary is not persuasive.

### B.  Credibility

Ms. Komorowski also contends that the ALJ did not properly evaluate her credibility. (R. 13, PageID #: 654, 671-673).  Although conceding that questions of credibility are the province of the ALJ (*id.* at 671), claimant argues that the ALJ erred when evaluating the medical

evidence and determining whether her testimony was credible (*id.* at 672).  Claimant contests the following portion of the decision:

> The claimant alleged she was unable to perform work due to the limiting signs and symptoms of her severe impairments.  She reported her limitations included major depression, severe anxiety, extreme tiredness, low energy, panic episodes, inability to focus, and confusion (2E).  She testified that it was hard to get out of bed, that she slept a lot, and that everything seemed like a difficult task.  She explained that at her last job, she needed to call off a few times due to her symptoms and that by the end of the day she was completely out of energy.

(R. 13, PageID #: 672-673, quoting R. 10, tr., at 15).  The ALJ continued with the analysis:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 10, tr., at 15-16).

It is the ALJ's role, and not this court's, to evaluate the credibility of the claimant. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007).  An ALJ's findings based on the credibility of the claimant are accorded great weight and deference, particularly since the ALJ observes the witness's demeanor and credibility.  *Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence, based on a consideration of the entire record.  *Rogers*, 486 F.3d at 247; *Walters*, 127 F.3d at 531; *Gonzalez*, 2008 WL 584927, at *5.

Komorowski specifically alleges a violation of Social Security Ruling 16-3p.  (R. 13, PageID #: 671-672).  SSR 16-3p lists the factors relevant to the ALJ's credibility determination concerning the claimant's alleged disabling symptoms.  *Rogers*, 486 F.3d at 247.  These factors

20

include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." *SSR 16-3p, 2017 WL 5180304, at \*7-\*8*; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360, 2017 WL 4278378, at \*4 (6th Cir. Jan. 30, 2017).  An ALJ is not required to expressly address all the factors listed in SSR 16-3p, but should sufficiently articulate her assessment of the evidence to assure the court that she considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

Here, the ALJ properly considered the SSR 16-3p factors.  Although claimant challenges the above-referenced excerpt from the ALJ's decision, the ALJ further supported the determination that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the evidence of record.  The ALJ's decision includes a lengthy examination of the evidence, over five single-spaced pages, that includes claimant's reports of symptoms over time; prescribed medications, therapy, and relevant treatment; daily activities; clinical findings and diagnoses, as further support for the conclusion that the claimant's statements about the intensity, persistence and limiting effects of her symptom are not consistent with the objective findings in the record.  (R. 10, tr., at 15-20).

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800

21

F.2d at 545.  Although the claimant briefly cites the evidence which she believes compels a different conclusion than that reached by the ALJ (R. 13, PageID #: 673), the ALJ's evaluation of Komorowski's credibility adequately addresses the SSR 16-3p factors and is supported by substantial evidence.

C.  Step Five Analysis

Although the claimant bears the burden of proof during the first four steps of the sequential evaluation, the burden shifts to the Commissioner at Step Five.  *Wilson*, 378 F.3d at 548 (citing *Walters*, 127 F.3d at 529).  At Step Five, "the ALJ determines whether, based on the claimant's residual functional capacity, as well as [her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(v)).  Ms. Komorowski contends that the ALJ did not meet her burden at Step Five of the sequential evaluation (R. 13, PageID #: 654, 673-675) and "disregarded any objective or subjective evidence which would have resulted in finding the claimant disabled" (*id.* at 673).  Claimant's argument challenges two hypothetical questions the ALJ posed to the vocational expert (VE) during the administrative hearing.  *Id.*

1.  Hypothetical Questions

The ALJ's Step Five determination must be supported by substantial evidence.  "This kind of '[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question…." *Ealy v. Commissioner*, 594 F.3d 504, 512-13 (6th Cir. 2010).  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental

impairments." *Id.* at 516; *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *14 (6th Cir. June 23, 2005); *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases).  But the hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible.  *Parks v. Social Sec. Admin*., No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011); *Casey v. Secretary, HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (per curiam).  Further, the hypothetical questions need only reference the claimant's limitations, and need not list the claimant's medical conditions.  *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001)).

Claimant contends that the ALJ's hypothetical questions failed to include limitations identified by the NP and Dr. Koricke.  (R. 13, PageID #: 673).  She asserts that these limitations would result in a person being off task twenty percent of a workday, or absent two days per month, "due to mental health concerns."  *Id.*  She claims that these limitations were supported by NP McLaughlin's assessment and the Signature Health forms.  *Id.*  As discussed above, however, the ALJ adequately explained why she did not fully accept the NP's limitations, R. 10, tr., at 20-21, thus it would not be error for the ALJ to decline to incorporate those limitations into the hypotheticals questions, *Parks*, 2011 WL 867214, at *9; *Casey*, 987 F.2d at 1235, or into the resulting residual functional capacity (RFC).  The ALJ, nonetheless, did incorporate the "off task" limitation into a third hypothetical question posed to the VE, and did the same for the "absent from work" limitation in a fourth hypothetical question (R. 10, tr., at 85-86), although the ALJ declined to incorporate such limitations into the RFC.  Ms. Komorowski does not identify other specific medically determinable impairments that the ALJ should have

incorporated into a hypothetical question, beyond what the ALJ actually asked.  (R. 13, PageID #: 673-674).

The claimant's RFC is what the claimant can still do despite her limitations.  *Bowman v. Commissioner*, 683 Fed. Appx 367, 371 (6th Cir. 2017); 20 C.F.R. § 404.1545(a)(1).  The ALJ has the responsibility for reviewing all the evidence in making this determination, and evaluates every medical opinion received in evidence.  20 C.F.R. §§ 404.1527(c), (e)(2).  Although the ALJ reviews and considers all the evidence before her, the responsibility for assessing the claimant's RFC rests with the ALJ.  20 C.F.R. § 404.1546(c).  This decision is an administrative, not a medical, determination.  *Lumpkin v. Colvin*, 112 F. Supp. 3d 1169, 1172 (D. Colo. 2015).  "The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw [her] own inferences."  *Simpson v. Commissioner*, No. 08-3651, 2009 WL 2628355, at *12 (6th Cir. Aug. 27, 2009); *see also Lumpkin*, 112 F. Supp. 3d at 1172.

The claimant argues that the ALJ "failed to consider testimony" that she might be off task at least twenty percent of the workday, or miss two workdays per month.  (R. 13, PageID #: 674).  The record is clear that the ALJ did in fact consider these issues, although she did not accept them into her RFC.  (R. 10, tr., at 15, 20-21, 85-86).  Therefore, there is no need to remand for further testimony on this topic, as claimant suggests, since the issue was addressed at the hearing.  *See* R. 13, PageID #: 674.

### 2.  VE's Testimony and Consistency with DOT

Ms. Komorowski's final argument asserts that the VE's testimony was not consistent with Dictionary of Occupational Titles ("DOT"), because she contends the jobs the VE identified in response to the ALJ's hypothetical questions required a reasoning level beyond the claimant's

24

capacity.  (R. 13, PageID #: 674-675).  Claimant further argues the case should be remanded because the VE's testimony did not support the ALJ's finding.  *Id.* at 675.

The Sixth Circuit has stated that "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p."  *Beinlich v. Commissioner*, No. 08-4500, 2009 WL 2877930, at *4 (6th Cir. Sept. 9, 2009) (citing *Lindsley v. Commissioner*, 560 F.3d 601, 605-606 (6th Cir. 2009)); *see also Martin v. Commissioner*, No. 04-4551, 2006 WL 509393, at *5 (6th Cir. Mar. 1, 2006) (ALJ does not have duty to conduct independent investigation into VE's testimony); *Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394, at *12-*13 (N.D. Ohio June 8, 2017), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017) (quoting *Beinlich*).  An ALJ complies with agency policy by asking whether there is any discrepancy between the VE's opinions and the DOT requirements for the jobs identified.  *Beinlich*, 2009 WL 2877930, at *4 (citing SSR 00-4p); *Lindsley*, 560 F.3d at 606.  The *Beinlich* court continued: "This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT."  *Beinlich*, 2009 WL 2877930, at *4 (citing *Ledford v. Astrue*, No. 07-4234, 2008 WL 5351015, at *10 (6th Cir. Dec. 19, 2008)); *Parrish*, 2017 WL 2728394, at *12.

At the hearing, the ALJ asked the VE if the testimony she provided was consistent with the information found in the DOT, and the VE responded that it was.  (R. 10, tr., at 86).  At that point, the ALJ asked if claimant's counsel had questions for the VE.  *Id.* Counsel then asked several questions pertaining to Specific Vocational Preparation (SVP) or reasoning level requirements, but did not pursue the issue further.  *Id.* at 86-87.  After the September 18, 2018, hearing, claimant's counsel wrote an objection letter dated that same date to the ALJ, asserting

25

that the VE's testimony concerning the required reasoning level for cited occupations was inconsistent with the DOT, and objecting that the VE "did not provide a basis as to why her testimony should be accepted considering the inconsistency."  (R. 10, tr., at 253).  Notably, this objection—that the VE's testimony was not consistent with the DOT and should not be accepted—was not raised at the hearing for the ALJ's consideration, or for the VE to be able to respond.  *See generally* R. 10, tr., at 86-87.

Where the claimant does not raise objections to the VE's testimony until after the hearing, the ALJ has no obligation to rule on such objections.  *Jones v. Commissioner*, No. 2:17CV1062, 2019 WL 2511111, at *8 (S.D. Ohio June 18, 2019), adopted by, 2019 WL 3086255 (July 12, 2019) (citing *Horner v. Berryhill*, No. 17C4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20, 2018) ("Because HALLEX does not compel an ALJ to rule on objections to VE testimony posed after a hearing has ended, the ALJ's failure to do so in this case was not erroneous."); *Owens v. Berryhill*, 17CV4824, 2018 WL 3303274, at *2 (N.D. Ill. July 5, 2018) ("Here [plaintiff] did not raise the relevant objections to the VE's testimony until after the hearing"); *Rockholt v. Berryhill*, No. CIV-17-578, 2018 WL 4462231, at *7 (W.D. Okla. Sept. 18, 2018) (collecting cases)); *see also Robberts v. Commissioner*, No. 2:18CV541, 2019 WL 4023549, at *7 (S.D. Ohio Aug. 26, 2019) (quoting *Jones*); *Patterson*, 2019 WL 4237854, at *4-*9 (extensive discussion, citing cases).

Further, the failure to object to evidence at the hearing precludes the claimant from later raising the issue.  *Robberts*, 2019 WL 4023549, at *6, *8; *Patterson v. Saul*, No. 3:18-0641, 2019 WL 4237854, at *9 (M.D. Tenn. Aug. 2, 2019), adopted by, 2019 WL 4237855 (M.D. Tenn. Aug. 23, 2019); *Stamper v. Commissioner*, No. 1:18CV697, 2019 WL 2437813, at *8-*9

26

(N.D. Ohio May 8, 2019), adopted by, 2019 WL 2437016 (N.D. Ohio June 11, 2019) (quoting *Kidd v. Berryhill*, No. 5:17CV420, 2018 WL 3040894, at *6 (E.D. Ky. June 19, 2018) (citing cases)); *Carter v. Commissioner*, No. 2:14CV244, 2014 WL 4987419, at *9 (S.D. Ohio Oct. 6, 2014).  Remand on this issue is not supported by the case law, and the request for remand should be denied.

## VIII.  CONCLUSION

The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination. Moreover, the ALJ's RFC is supported by substantial evidence, and the Commissioner's final decision should be affirmed for the aforementioned reasons.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:  July 5, 2020

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72(a); LR 72.3(a). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).